Annette BUSH, An Infant, Proceeding by her Next Friend and Guardian, Bessie BUSH, Appellant,

v.

Joseph Frank O'DANIEL, Appellee.

and

Bessie BUSH, Administratrix of the Estate of Roger Dale Foster, Deceased, Appellant,

v.

Joseph Frank O'DANIEL, Appellee.

Supreme Court of Kentucky.

Nov. 21, 1985.

James F. Clay, Jr., Danville, for appellant, Annette Bush.

Theodore H. Lavit, Lebanon, for appellant, Bessie Bush.

James L. Avritt, Lebanon, for appellee.

LEIBSON, Justice.

The issue is how to seek appellate review when the trial court denies a party the right to proceed on appeal *in forma pauperis.*

Appellants, plaintiffs below, seek to appeal, *in forma pauperis,* from adverse judgments in the trial court which followed jury verdicts for the defendant/appellee, in a civil action for wrongful death and assault. They had been permitted to commence and proceed *in forma pauperis* in the trial court until judgment, using KRS 453.190, which provides "a poor person residing in this state (a right) to file or defend any action or appeal therein without paying costs."

The initial order permitting appellants to proceed as poor persons was granted ex parte, based on their affidavits submitted when suit was filed. After trial and judgment, however, the court, following a hearing at which the appellee opposed their status as poor persons, denied their further motion to proceed on appeal *in forma pauperis.* The trial court's final order denying appellant, Bessie Bush, relief enumerates findings of fact from which the court concluded that she was not a "poor person" as defined in KRS 453.190. The motion on behalf of appellant, Annette Bush, was later overruled, presumably for the same reasons.

Pursuant to CR 76.18(5), the Kentucky Court of Appeals has asked our Court to accept transfer of this appeal in order to clarify the procedure to be followed by a person claiming to be an indigent when seeking review of an order denying a motion to proceed on appeal *in forma pauperis.*

There are a number of issues underlying the question before us.

1) Does the initial grant of "poor person" status at the commencement of the

action automatically carry through to the appeal stage?

2) Should the question of an appeal *in forma pauperis* be decided ex parte, on the appellant's motion supported by affidavit, or is the adverse party entitled to notice and a hearing on the question?

3) If the trial court denies the right to proceed on appeal *in forma pauperis*, how does the appellant get this issue reviewed, by appeal from the order denying relief or by writ of mandamus?

4) Is the time for appeal of the judgment in the underlying case stayed while the denial of appeal *in forma pauperis* is being reviewed?

5) Does the appellate court consider the merits of the right to appeal *in forma pauperis* de novo, or is it limited to deciding whether the trial court abused its discretion in denying the right?

KRS 453.190, which defines "poor person" and provides the method for an indigent "to file or defend any action or appeal therein without paying costs," has already been interpreted by our Court in a manner adequate to provide for appeals in criminal cases. *Gabbard v. Lair*, Ky., 528 S.W.2d 675 (1975).

The procedure under *Gabbard* requires application to the trial court for permission to prosecute on appeal *in forma pauperis*, which, if denied, will be reviewed by the appellate court by appeal from the order denying relief, as with other final orders. *Gabbard* further provides:

"Until such time as the court disposes of the appeal on the motion to proceed in forma pauperis, the running of the time set by [former] RCr 12.58 within which the record on the appeal from the criminal conviction must be filed shall be stayed." 528 S.W.2d at 678.

The problem in civil cases, as opposed to criminal cases, is CR 73.02(1)(b), which requires payment of the filing fee for an appeal before the notice of appeal in the underlying action can be docketed. CR 73.02(1)(b). Thus, until now, the poor person seeking appeal in a civil case would lose the right to appeal the underlying judgment during the period necessary to seek relief from the order denying appeal *in forma pauperis*, because the appeal of the underlying action would not be docketed. In this set of circumstances, the litigant had no choice but to seek a writ of mandamus from the appellate court and to ask for a stay of the running of time on the underlying judgment while the right to mandamus was being decided.

■ Recent changes in our Civil Rules obviate any further need for the writ of mandamus process. Where the reason for failing to pay the fee is because one seeks to perfect a poor person's appeal, under CR 73.02(2) as amended, effective Jan. 1, 1985, it is no longer fatal to file a notice of appeal before paying the filing fee. Until such time as that issue is finally disposed of, there is a perfectly valid reason for the notice of appeal to be filed without the filing fee. *Manly v. Manly*, Ky., 669 S.W.2d 537 (1984) has no application to a pauper's appeal, and it is no longer necessary to seek a writ of mandamus in order to avoid its impact.

Next, effective Jan. 1, 1986, a new paragraph is added to CR 5.05, which shall read:

"(4) If accompanied by a Motion for Leave to Proceed in Forma Pauperis and a supporting affidavit, and made in good faith, any matter to be filed under these rules, *including appeals*, shall be considered filed on the date it is tendered. If the Motion to Proceed in Forma Pauperis is overruled, the moving party shall then have ten days to pay any required fees or costs or to appeal the decision. If the moving party fails to pay the required fees or costs, or to seek review, the matter shall be treated as though not timely filed." (Emphasis added.)

This new rule will provide for an appeal from a trial court's order denying the right to commence an action *in forma pauperis*. The tender of notice of appeal of the underlying action will suffice to preserve the right to appeal it until after review of the denial of the right to appeal *in forma*

*pauperis.* It will no longer be necessary to seek a writ of mandamus from an appellate court to obtain review of a trial court's order denying a motion to commence or proceed in the trial court *in forma pauperis.* *See Salyers v. Cornett,* Ky., 566 S.W.2d 418 (1978). Further, it will no longer be necessary to seek mandamus where the trial court denies the right to appeal *in forma pauperis* and the litigant seeks appellate review.

The only difference between the procedure at the stage where one *commences* the action, and the stage where one seeks *appeal* after the case has been lost, is that, at the commencement of the action, the person seeking relief as an indigent must necessarily proceed ex parte. At that point one seeks to avoid payment of initial costs, there is as yet no other party to the litigation and thus, no need for a contested hearing. KRS 453.190(3) specifies that the procedure to be followed in seeking to proceed *in forma pauperis* is "by motion." Before the action is filed the motion is necessarily ex parte.

There is, however, nothing in KRS 453.-190 mandating that once there are other parties to the litigation they should not have notice and an opportunity to be heard on this question, as with any other question where a court must exercise discretion. The right to appeal *in forma pauperis* is a decision which, by its nature, calls for an opportunity for the adverse party to be heard, and there is nothing in the statute denying such opportunity.

■ Thus, we conclude that the logical way to review the trial court's denial of the right to appeal *in forma pauperis* is not by writ of mandamus, but by appeal. Immediately and automatically, when the notice of appeal from the order denying the right to appeal *in forma pauperis* is filed, the appellate court should stay the running of time on further steps related to the initial, underlying appeal, until this matter of appeal *in forma pauperis* can be determined.

■ Although we agree with the appellants that if they are poor persons they have the right to appeal *in forma pauperis,* we do not agree that their claim is absolute or conditioned merely upon filing a proper affidavit. Adverse parties of record have a right to be notified of the motion and have a right to challenge whether it is appropriate. The trial court must then, as it did in the present case, hold a hearing and make a decision as to whether such relief is appropriate. That decision, like a decision on any other question which is addressed to the sound discretion of the trial court, will not be reviewed de novo, but will only be reversed if clearly erroneous. CR 52.01.

■ Applying this standard to the present case, the findings of the trial court provide five different reasons why appeal *in forma pauperis* should be denied here. Although some of these reasons individually appear inadequate, we cannot say that, taken as a whole, the trial court's findings are clearly erroneous. There are enough facts at issue in this respect to make the credibility of the appellants critical. Credibility is an issue that addresses itself to the fact finder.

Therefore, the decision of the trial court overruling the motion to appeal *in forma pauperis* is affirmed.

STEPHENS, C.J., and AKER, GANT and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents by separate opinion in which STEPHENSON, J., joins.

VANCE, Justice, dissenting.

However laudable the end result accomplished by this opinion may be, I cannot agree that the end justifies any means necessary to accomplish it.

The result is that C.R. 73.02(1)(b) no longer requires a poor person to pay the filing fee which is required of all other persons before a notice of appeal may be

filed. There is nothing whatever in C.R. 73.02(1)(b) which makes an exception for a poor person.

C.R. 73.02(1)(b) provides:

"If an appeal or cross-appeal is from an order or judgment of the circuit court, the filing fee required by Rule 76.-42(2)(a)(i) or (ii) shall be paid to the clerk of the circuit court at the time the notice of appeal or cross-appeal is filed, and the notice shall not be docketed or noted as filed until such payment is made."

The majority states that because of an amendment to C.R. 73.02(2) it is no longer fatal for a poor person to file a notice of appeal before paying the fee. C.R. 73.-02(2), however, does not mention poor persons, and it does not mention filing fees. It absolutely does not provide for any exceptions to the requirement of C.R. 73.-02(1)(b) that the notice of appeal cannot be docketed or noted as filed until the fee has been paid.

C.R. 73.02(2) provides:

"The failure of a party to file notice of appeal within the time specified in this rule, or to file notice of cross-appeal within the time specified in Rule 74, shall result in a dismissal of the appeal or cross-appeal. The failure of any party to comply with other rules relating to appeals *or motions for discretionary review* (except Rule 76.20(2)(a)) does not affect the validity of the appeal *or motion*, but is ground only for such action as the appellate court deems appropriate, which may include:

"(a) A dismissal of the appeal *or motion for discretionary review,*

"(b) Striking of pleadings, briefs, record or portions thereof.

"(c) Imposition of fines on counsel for failing to comply with these rules of not less than $250 nor more than $500, and

"(d) Such further remedies as are specified in the applicable Rule.
. . . ."

The language of the rule is plain that the failure to timely file a notice of appeal shall result in dismissal of the appeal. The further provision that failure to comply with *other* rules relating to appeals does not affect the validity of the appeal must, perforce, apply only to rules other than the rule which requires timely filing of the notice.

The question under Rule 73.02(2) is whether the notice of appeal was timely filed. If it was, a violation of other rules relating to appeals will not necessarily result in dismissal of the appeal.

In this case, the notice of appeal was not timely filed. In fact, no notice of appeal was ever filed. True, a notice was tendered to the clerk, but it has not been filed simply because Rule 73.02(1)(b) prevents the filing until the fee has been paid.

We recently construed C.R. 73.02(1)(b) in *Manly v. Manly,* Ky., 669 S.W.2d 537 (1984). We held:

"Because the notice cannot be filed until the fee has been paid, the failure to timely pay the fee is fatal to the timely filing of the Notice of Appeal."

*Id.* at 540.

"It is the holding of this court that the payment of the filing fee for appeals is no longer simply a procedural step in perfecting an appeal. The payment of the filing fee is a condition precedent to the filing of a Notice of Appeal, *and until the filing fee has been paid, the Notice of Appeal cannot be filed.*" (Emphasis added.)

*Id.* at 540.

"The act of a clerk in endorsing upon a Notice of Appeal that it is filed and the time and date of filing *is a nullity where he is precluded from doing so until he has collected a filing fee which he has not, in fact, collected.*" (Emphasis added.)

*Id.* at 539.

"The result reached here may seem harsh to some. If relief is to be provided, however, it should come about by

way of a change in the Rule, not from a failure to enforce it."

*Id.* at 540.

The majority casually states that *Manly v. Manly* has no application to a pauper's appeal without giving any reason why *Manly* does not apply. In my view, *Manly* interprets C.R. 73.02(1)(b) as it applies to all appeals, and neither the opinion of the court in *Manly* nor the express language of C.R. 73.02(1)(b) allows for an exception in the case of poor persons.

Here, as in *Manly,* the notice of appeal was simply not filed because it cannot be filed without the payment of the filing fee. The ink is scarcely dry on the *Manly* opinion, yet the majority now holds, without expressly overruling *Manly,* that a notice of appeal can be filed without the payment of the filing fee. C.R. 73.02(1)(b) which required the result in *Manly* is still in full force and effect. The majority simply ignores it and refuses to enforce it.

I would welcome the result reached by the majority if the rules of procedure permitted it. As we stated in *Manly,* the result sounded harsh, but relief should come by way of amendment to the rule, not from the failure to enforce it.

We chose not to amend C.R. 73.02(1)(b) and now, it seems to me, we choose not to enforce it. A rule which is not enforced is worse than no rule at all.

This case is not very meaningful to the parties. Although they won the right to appeal, they lost on the merits and they are no better off than if the appeal had been dismissed for failure to pay the filing fee. It is really no significant victory for poor persons because effective January 1, 1986, C.R. 5.05(4) specifically grants to poor persons the right to file a notice of appeal without payment of the filing fee.

In short, there does not appear to be much reason for the opinion except to proclaim an exception to requirements of C.R. 73.02(1)(b) which, in my view, does not exist.

STEPHENSON, J., joins in this dissent.