S. Drew **FOXWORTHY** and
Mark Lea, Movants,

v.

**NORSTAM VENEERS,
INC., Respondent.**

No. 89-SC-853-DG.

Supreme Court of Kentucky.

Sept. 26, 1991.

As Amended Nov. 12, 1991.

John R. Leathers, Gregory C. Shields, Frost & Jacobs, Lexington, for movants.

John G. Crutchfield, MacKenzie & Peden, P.S.C., Louisville, for respondent.

LEIBSON, Justice.

Movants, Foxworthy and Lea (plaintiffs in the trial court and appellants in the Court of Appeals), filed suit in Jefferson Circuit Court against respondent, Norstam Veneers, Inc. (a defendant in the trial court and the appellee in the Court of Appeals), alleging breach of contract in failing to perform an "Agreement" dated March 18, 1988 to negotiate the sale of the business and assets of Norstam and a "Letter of Intent" dated June 22, 1988 extending the "terms and conditions of the agreement ... until July 13, 1988." In the Letter of Intent the parties "agree[d] to negotiate a definitive agreement for the sale of the assets" for "the sum of $1,000,000.00," and with the execution of the Letter of Intent movants paid respondent $10,000 "as a good faith payment."

The Complaint also named as an additional defendant, Kenneth J. Staugas, president of the respondent corporation, alleging Staugas interfered with respondents' contractual relations.

In March 1989, the trial court sustained a Motion for Summary Judgment against movants and in favor of Norstam, which was not then final and appealable, presumably because the complaint against Staugas for intentional interference with contractual relations was still pending. Then, on June 13, 1989, this summary judgment against movants was amended to specify it was "final and appealable."[1] The final and appealable judgment of June 13, 1989, also provided that the movants should delay the filing of the notice of appeal for at least 15 days from the date of the hearing in order to allow time for the remaining defendant, Staugas, to first file his Answer to the first Amended Complaint.

Movants' counsel mailed the original and a copy of the Notice of Appeal from Lexington, Ky., to the clerk of the Jefferson Circuit Court on July 6, 1989, but failed to include with it payment of the filing fee as required by CR 73.02(1)(b). Counsel for movants admits this oversight, advising that counsel inadvertently assumed, negligently but innocently, that a secretary had included the necessary check. Counsel assumes full responsibility for the mistake but sees no legitimate reason why the clients should be punished for counsel's inadvertence when it was promptly corrected when called to counsel's attention and the opponent has suffered no resulting prejudice.

---

1. We assume the movants decided they needed a decision from an appellate court establishing the contract to purchase Norstam was valid and binding before proceeding further on the interference with contractual relations count against Staugas.

The Jefferson Circuit Clerk's office compounded counsel's mistake by filing the Notice of Appeal rather than returning it. The clerk's office stamped "received" on the original, which was then entered on the docket sheet as filed ("FLD"), and also on the copy provided by movants' counsel to be returned in a self-addressed envelope. Had the clerk's personnel noted the mistake and returned the Notice of Appeal (or called counsel about it) there was ample time to correct the deficiency by providing the filing fee within the 30 day period allowed by CR 73.02(1)(a). Norstam's counsel discovered the mistake and called it to the clerk's attention, and the clerk in turn notified movants' counsel, who promptly supplied the missing check, but, of course, by then more than 30 days had elapsed since the trial court had entered the Order making the summary judgment against movants final and appealable.

Citing *Manly v. Manly,* Ky., 669 S.W.2d 537 (1984), the Court of Appeals dismissed the movants' appeal. We have accepted discretionary review to consider whether the decision in *Manly* is still valid in light of the subsequent amendment of CR 73.02 in 1985, the purpose of which was to effect a fundamental change in the way the rule of appellate practice shall be enforced from a policy of *strict* compliance to one of *substantial* compliance, and in light of the subsequent decisions of our Court in *Bush v. O'Daniel,* Ky., 700 S.W.2d 402 (1985), *Ready v. Jamison,* Ky., 705 S.W.2d 479 (1986), *Crossley v. Anheuser–Busch, Inc.,* Ky., 747 S.W.2d 600 (1988) and *City of Devondale v. Stallings,* Ky., 795 S.W.2d 954 (1990). For reasons that will be stated we reverse the Court of Appeals and remand the case to that court with orders to set aside the order of dismissal and proceed with the appeal.

The question is what happens when, despite the language in CR 73.02(1)(b) directing the filing fee shall be "paid to the clerk of the circuit court at the time the Notice of Appeal ... is filed, and the notice shall not be docketed or noted as filed until such payment is made," nevertheless, through inadvertence, the filing fee is not paid in advance, the clerk files the Notice of Appeal anyway, and then the filing fee is paid after the 30 day period for filing a Notice of Appeal has elapsed. *Manly* holds that if the filing fee is not paid at the time the notice of appeal is filed the notice of appeal is "a nullity." The 1985 amendment to CR 73 specifies by its terms that while failure to timely file a notice of appeal, notice of cross-appeal still "shall result in a dismissal":

> "The failure of any party to comply with *other rules* relating to appeals ... does not affect the validity of the appeal ..., but is ground only for such action as the appellate court deems appropriate,...." CR 73.02(2). [Emphasis added.]

Movants ask us to contrast the facts in this litigation with the situation presented in *Manly v. Manly, supra.* In *Manly,* the appellant waited until the last day to file the Notice of Appeal and then hand carried it to the clerk's office, putting it through a stamping machine and placing it in a box for filing, with no interaction with court personnel. In *Manly,* the clerk acquiesced in the filing fee being paid after the deadline, and counsel was aware from the beginning that the filing fee had not been paid in timely fashion. In the present litigation the Notice of Appeal was served by mail a full week before the expiration of the filing deadline, at which time the notice was mailed to the clerk's office where the clerk's personnel received it and made the error of filing it rather than rejecting it as required by CR 73.02(1)(a). Had the clerk's office returned the Notice of Appeal rather than filing it, an innocent mistake, made by assuming the secretary had mailed a check to cover the filing fee with the Notice of Appeal, could have been timely corrected.

Movants maintain there is a factual difference between this case and *Manly* that should be of critical importance, this being that their counsel made an innocent mistake in assuming that the check for the filing fee was mailed to the clerk with the Notice of Appeal, whereas *Manly* represents deliberate oversight. It is not clear that *Manly's* counsel was engaged in deliberate oversight, but even if it were, this

distinction could only make a difference in the severity of an appropriate sanction. It cannot make a difference in the result, dismissal, if failing to pay the filing fee in advance is automatically fatal. So the threshold question remains whether failing to pay the filing fee is still fatal, automatically, as we held in *Manly*, given the change of the rule to say, specifically, that *only* "[t]he failure of a party to file notice of appeal within the time specified [30 days] ... shall result in dismissal," and "[t]he failure of any party to comply with other rules ... does not affect the validity of the appeal ..., but is ground only for such action as the appellate court deems appropriate," which means sanctions are permitted instead of dismissal when the error is corrected and the opponent is not prejudiced by the mistake. CR 73.02(2). If, as *Manly* holds, notice of appeal is a "nullity" unless a filing fee has been paid, there is no recourse, because, as contrasted with introducing a policy of substantial compliance permitting sanctions other than automatic dismissal for violation of all "other rules relating to appeals," the one thing that was *not* changed when CR 73 was amended is that failing to file the notice of appeal "shall result in a dismissal of the appeal." Under the new rule everything else "is ground only for such action as the appellate court deems appropriate." *Id.*

Respondent's Brief concedes that it "cannot maintain that failing to pay the filing fee ... prejudiced us." The Brief states, rather facetiously, "we do feel, however, that the absence of rules tends to kind of discombobulate the orderly workings of the Appellate Courts." My dictionary defines "discombobulate" as "to upset; confuse; frustrate" as in "plans being discombobulated by the turn of events." The Random House Unabridged Dictionary of the English Language, 1966 ed.

While there are sound reasons involving the finality of judgments why failing to timely file a notice of appeal should result in automatic dismissal, we cannot fathom any reason why an appellate court should be so "discombobulated" by the failure to timely pay a filing fee that it should respond with Draconian measures. Most certainly automatic dismissal, cutting off the right to appeal guaranteed by Section 115 of our Kentucky Constitution, qualifies as a Draconian measure. The Respondent's Brief has provided no such reason and offhand we can think of none.

*Manly v. Manly* duly notes that "[i]t is not the payment of the filing fee, but rather the filing of the Notice of Appeal which invokes the jurisdiction of the appellate court." 669 S.W.2d at 539–40. But *Manly* then reasons, "[b]ecause the notice cannot be filed until the fee has been paid, the failure to timely pay the fee is fatal to the timely filing of the Notice of Appeal." *Manly* cites as authority the "policy of strict compliance with rules of procedure regarding appeals" stated in *Foremost Ins. Co. v. Shepard*, Ky., 588 S.W.2d 468, 469 (1979). This policy was changed by this Court when it amended CR 73.02(2) in 1985, excising from CR 73 the phrase which was interpreted in *Manly* as calling for strict compliance, and substituting a new phrase expressing a policy of substantial compliance. Whereas before, subparagraph (2) of CR 73.02 limited the use of sanctions other than dismissal to *"further steps"* occurring *after* payment of the filing fee and filing the notice of appeal, with the 1985 amendment, the *only* procedure specified as mandating "dismissal" is "failure of a party to file notice of appeal within the time specified." *"[F]ailure ... to comply with other rules ... does not affect the validity of the appeal."* CR 73.02(2).[2]

We note that Bertlesman and Philips, *Rules of Civil Procedure Annotated*, Ky. Prac. Vol. 7 (4th ed. 1984), commenting on the rule as it was even before the 1985 amendment, states "[t]he Rule does not

---

**2.** CR 73.02(2) expressly places timely notice of a "cross-appeal" and of "motions for discretionary review" in the same category as a "notice of appeal." For some time now our Court, routinely, has sent an order to counsel advising of a ten day extension in which to correct the deficiency where counsel has overlooked paying the filing fee when tendering the Motion for Discretionary Review.

address whether an appeal should be dismissed where a party fails to tender the filing fee." Thus, even before 1985 it was not the literal language of the rule but the policy of strict compliance that caused failure to pay the filing fee, as well as other defects in the form of the notice of appeal to be viewed as "fatal," or "jurisdictional." With the single exception of failure to include indispensable parties *(City of Devondale v. Stallings, supra)*, which, for obvious reasons, has always been recognized as necessary to invoke the jurisdiction of an appellate court, all other appellate procedural requirements considered by our Court since the 1985 change in this rule, have been dealt with as requiring only sanctions and not dismissal where the opponent has not been prejudiced. Other defects in complying with the form of the notice of appeal were addressed in *Ready v. Jamison, supra,* and failure to timely file the required prehearing statement was addressed in *Crossley v. Anheuser–Busch, Inc.,* supra. Both cases hold such defects do not require automatic dismissal.

At the time our Court decided *Ready v. Jamison, supra,* our stated intent was to replace strict compliance with substantial compliance in the rules governing appellate practice. *Ready* refers to *Manly v. Manly, supra,* and overrules it by implication, stating:

"Recently, in *Manly v. Manly,* Ky., 669 S.W.2d 537 (1984), while sticking to our policy of strict compliance and automatic dismissal, we stated:

'If relief is to be provided, however, it should come by way of a change in the Rule, not from a failure to enforce it.' 669 S.W.2d at 540.

Since *Manly,* with the enthusiastic endorsement of the members of the Kentucky Bar Association voiced in a public hearing on proposed rule changes at the 1984 KBA Convention, relief has been provided by way of a change in the rules. New CR 73.02(2) is that change. Thus, we utilized the door to change left open in *Manly.*

The time has come to recognize the change from the 'policy of strict compliance with rules of procedure regarding appeals' *(Foremost, supra* at 469), to a new policy of substantial compliance as set out in CR 73.02(2)." 705 S.W.2d at 481.

*Ready* also footnoted *Bush v. O'Daniel,* Ky., 700 S.W.2d 402, 404 (1985), wherein we held that, because of new Rule CR 73.02(2) "failing to pay the [filing] fee ... is no longer fatal." The facts in *Bush* involved a failure to pay the filing fee when the notice of appeal was filed when the appellant was attempting to proceed with a pauper's appeal *which was denied.* If failing to pay the filing fee on time is automatically fatal (or jurisdictional), *Bush v. O'Daniel* would have to have been decided differently. Thus the factual distinction that exists between *Bush* and the present case is not a reason for a different result. We reached the result we did in *Bush v. O'Daniel,* by treating failure to pay the filing fee as neither fatal nor jurisdictional. We could hardly treat the failure to pay the filing fee in the present case as automatically fatal or jurisdictional unless we are prepared to overrule *Bush v. O'Daniel.*

Therefore, for the reasons stated herein, the decision of the Court of Appeals dismissing this appeal is reversed. The case is remanded to the Court of Appeals with directions to set aside the Order of Dismissal and to proceed with the appeal on its merits.

Further, counsel for movants, John R. Leathers, Gregory C. Shields and Frost & Jacobs, are ordered to show cause within thirty days of the rendition date of this decision, if any they have, why they should not be sanctioned for their failure to comply with CR 73.02(1)(b) by payment of a fine of $250 and all taxable court costs incurred in the Kentucky Supreme Court in connection with these proceedings.

All concur.