Jerry EDWARDS, Appellant

v.

Thomas A. VAN DE ROSTYNE, Assistant Commonwealth Attorney; Chief of Police White, L.M.P.D.; Sgt. Y. Gentry, LMPD, ETU; Steve Hopper, Shively P.D.; J. Stanley, L.M.P.D., ETU; T. Johnson, L.M.P.D., ETU; D. Jewell, L.M.P.D., ETU; Billy K. Brown, L.M.C.D. ID Lab; K.A. Dollinger, L.M.P.D. Id Lab; T. Hubbard, L.M.C.D. ID Lab; and Tom Campbell, Metro Corr. Director, Appellees.

No. 2006–CA–002023–MR.

Court of Appeals of Kentucky.

Jan. 18, 2008.

**798**

Jerry Edwards, Louisville, KY, pro se.

No Briefs for Appellees.

Before COMBS, Chief Judge; ACREE and TAYLOR, Judges.

## OPINION

ACREE, Judge.

Jerry Lee Edwards, a prisoner in the Louisville Metropolitan Department of Corrections, appeals the denial of his application to proceed *in forma pauperis* to prosecute a civil action he filed "against everyone who is involved, even remotely, in the prosecution of a pending indictment against him." *Edwards v. Van De Rostyne, et al,* No. 06–CI–7505, p. 2 (Jefferson Cir. Ct., Sept. 5, 2006)(Memorandum and Order)(hereafter "Order"). He also appeals the Jefferson Circuit Court's order dismissing his civil action as frivolous. Because the Jefferson Circuit Court only applied Kentucky Revised Statute (KRS) 453.190 to Edwards' application, without consideration of KRS 454.410, we remand to the circuit court to proceed under that statute. Otherwise, we affirm.

### Factual and Procedural Background

Edwards was indicted on charges of burglary, robbery, assault, and receiving stolen property over $300—the stolen property being various firearms. He was also indicted on charges that about a month later he and others entered a department store, shot out a store window, held employees at gunpoint, and stole some $75,000 to $85,000 in cash.

As Edwards awaited his criminal trials, he planned a civil action against the Assistant Commonwealth's Attorney who was prosecuting him, the Chief of Police, the Metro Corrections Chief, various police officers who participated in his arrest or who processed his intake, and others who participated in processing evidence of the crime.

Edwards signed his complaint on June 1, 2006, verifying his allegations that the defendants, "alone or in accord," were guilty of "forging, falsifying, and manufacturing forinsic [sic] evidence ... with the intent to deceive the people of the Commonwealth[.]" The remaining averments in the complaint were not more illuminating.

On July 31, 2006, prior to filing the complaint, Edwards completed a form application and affidavit to proceed *in forma pauperis*, and attached a copy of his prison account statement showing account activity for the previous eight months.

Edwards finally filed his complaint on August 24, 2006. On the strength of the application alone, the clerk did not require him to pay any fees or costs. The trial court promptly reviewed Edwards' file consisting then of the complaint, the application, and Edwards' prison account statement. On September 5, 2006, the trial court entered an order denying Edwards' application to proceed *in forma pauperis*. Edwards appealed that order and has proceeded thus far without paying any fees or costs.

In the same order, the trial court dismissed Edwards' civil action, stating

> If [Edwards'] claim had any merit it would best be voiced in the forum of the existing criminal action. To permit the putative Plaintiff to institute and litigate a parallel civil action and the associated cost thereof to the taxpayer would be frivolous under [KRS 454.405], while the criminal action is still pending.... [T]he matter is dismissed without prejudice.

Order, p. 2. It is from this combined order that Edwards takes his appeal.

### Denial of Edwards' Application to Proceed In Forma Pauperis

 The decision to grant or deny an application to proceed *in forma pauperis*

pursuant to KRS 453.190 is within the sound discretion of the trial court and we may not reverse that decision in the absence of clear error. Kentucky Rule of Civil Procedure (CR) 52.01; *Bush by Bush v. O'Daniel*, 700 S.W.2d 402, 405 (Ky.1985). The problem presented in our review of this case is that it involves an *inmate's* application and, therefore, is not governed *solely* by KRS 453.190, as it would have been before 1996.

Prior to 1996, KRS 453.190 was the only statute that provided a means by which a party could apply for a waiver of filing fees and other costs of litigation. That prior version of KRS 453.190 made no distinction between inmate and non-inmate applicants. Also, nothing in the statute *mandated* that anyone, inmate or not, seek its benefits. KRS 453.190(1995). That has since changed.

In 1996, Kentucky's legislature enacted comprehensive legislation addressing litigation initiated by inmates when it passed House Bill 323. *See* 1996 Kentucky Laws Ch. 118 (H.B.323), "AN ACT relating to litigation," hereafter, the "Act." Similar to federal legislation designed to regulate inmate litigation, 28 United States Code (U.S.C.) §§ 1915, 1915A, the Act appears intended in no small part to curb frivolous suits by inmates, but it also allows inmates to pay reduced costs of litigation, even when they do not qualify to proceed *in forma pauperis. Id.*

Sections 1, 2, and 3 of the Act created new statutes—KRS 454.405 ("Dismissal of civil actions brought by inmates; grounds; order"), KRS 454.410 ("Payment of fees and courts costs by inmate; waiver"), and KRS 454.400 ("Definitions for KRS 454.405 and 454.410"), respectively. Section 4 of the Act added subsections (4) and (5) to KRS 453.190.[1]

---

1. Sections 5, 6 and 7 of the Act are not germane to this case. Section 5 was enacted

In order to fully comprehend these statutes, they must be read together. Together, they suggest an *ex parte*[2] procedure that should be followed by a trial court in reviewing litigation initiated by an inmate.

█ We begin with the mandatory provisions of KRS 454.410 which presents the first hurdle for the inmate who desires to litigate without paying the full amount of fees and court costs.

> When an inmate commences ... an action ... without paying the fees and court costs imposed by law, the inmate shall prepare an affidavit with a certified copy of the inmate's prison account statement showing the total deposits for the six (6) months immediately preceding the inmate's commencement ... of the action....

KRS 454.410(1). While the legislature could have been clearer, this provision requires a district or circuit court clerk to review any complaint filed by an inmate who pays no fees to ensure that it is accompanied by a proper affidavit and certified copy of the prison account statement.[3] If the complaint is not so accompanied, the clerk may properly reject the complaint. Otherwise, the clerk must file the complaint without a filing fee. This brings us to the second step in the process.

█ While the initial waiver of fees and costs benefits the inmate, the statute requires the trial court to determine the proper fees and costs to be taxed initially to the inmate, given his particular financial circumstances, as revealed by his affidavit and prison account record. In fact, the statute presumes—and therefore the court should presume—that "the inmate *shall* pay at least partial court fees and costs." KRS 454.410(2)(emphasis supplied).

█ However, the statute does provide that if "the court determines the inmate is unable to pay a fee[,]" the court may "waive[ ] all fees and costs." KRS 454.410(2). Because this waiver provision was created by the same 1996 Act that amended KRS 453.190, we conclude the standard to be applied under KRS 454.410(2) is the same as that applied under the revised KRS 453.190. Therefore, before a complete KRS 454.410(2) waiver is available, the court must find that the inmate is a "poor person" as defined by KRS 453.190(2). *See* KRS 453.190(1).

> A "poor person" means a person who is unable to pay the costs and fees of the

---

as KRS 454.415 requiring inmates to exhaust all applicable and available administrative remedies before filing any civil or criminal action. Section 6 added subsection (4) to KRS 197.045(1996) (renumbered as KRS 197.045(5) pursuant to 1998 Kentucky Laws Ch. 606 (H.B.455) § 24) and required the Department of Corrections to promulgate necessary regulations penalizing inmates for bringing civil actions that are "dismissed because ... malicious or harassing, or ... legally without merit or factually frivolous." 1996 Kentucky Laws Ch. 118 (H.B.323) § 6. A search of Kentucky Administrative Regulations reveals that the Department of Corrections has yet to promulgate such regulations, apparently deeming the statute sufficient guidance. In Section 7, the legislature "respectfully requested" the Supreme Court to "issue promptly any rules necessary to give

this Act full effect in the Court of Justice." 1996 Kentucky Laws Ch. 118 (H.B.323) § 7. We are unaware of any rule created in specific response to this invitation and presume the Supreme Court found none necessary.

2. As with an application proceeding purely pursuant to KRS 453.190, the procedure must necessarily be *ex parte* until such time as another party enters an appearance. *See Bush· by Bush v. O'Daniel*, 700 S.W.2d 402, 405 (Ky.1985).

3. The Administrative Office of the Courts has facilitated inmate compliance with this requirement by creating Form AOC–350 (revised 3–04) specifically for this purpose. Edwards used a prior version of the form, dated "4/2000". No particular form is mandated.

proceeding in which he is involved without depriving himself or his dependents of the necessities of life, including food, shelter, or clothing.

KRS 453.190(2). The inmate is thus also given the same opportunity as non-inmates to access the additional benefits of KRS 453.190, including the right to prosecute his case

without paying costs, ... any counsel that the court assigns him and ... all needful services and process, including the preparation of necessary transcripts for appeal, without any fees, ... and [he] shall not be required to post any bond except in an amount and manner reasonable under the circumstances of his poverty.

KRS 453.190(1).

However, it is very difficult for an inmate to qualify for all these benefits because, and practically by definition, an inmate cannot be a "poor person" for purposes of KRS 453.190. This is because the trial court must

consider the value of all ... an inmate receives by virtue of his incarceration ... including, among other things, the value of his room, board, [and] clothing ... or any other benefit similarly conferred upon the inmate.[4]

KRS 453.190(5). The inmate, therefore, is always "[ ]able to pay the costs and fees of the proceeding in which he is involved without depriving himself[5] ... of the necessities of life, including food, shelter, or clothing[,]" KRS 453.190(2), since "room, board, [and] clothing" are among the enti-

tlements the inmate receives by virtue of his incarceration. KRS 453.190(5).

If an inmate had only KRS 453.190 to ease his financial access to the Kentucky's courts (as was the case before 1996), and if he failed to qualify under that statute, he always would have to pay the full amount of fees and costs. KRS 454.410 allows the inmate an additional option not available to non-inmates. Under KRS 454.410(2), the inmate will pay as little as a five dollar ($5.00) filing fee unless he "has the ability to pay a higher amount, [in which case] the court shall order the inmate to pay the higher amount ... not [to] exceed the full amount otherwise imposed by law." KRS 454.410(2).

■ Therefore, the next step in the process requires the trial court to review the inmate's affidavit and prison account summary and set the proper fee for the inmate between the minimum of $5.00 and the full amount of the fees and costs. The trial court should take into account what the inmate currently has, as well as what the inmate has a history of acquiring. The legislative intent is clear that "the court shall order the inmate to pay the higher amount" if the inmate has any ability to do so. *Id.*

It is obvious that the Jefferson Circuit Court reviewed Edwards' affidavit and prison account statement which showed deposits during the previous six months totaling $374.32, and an additional $205 in deposits for the two months prior to that. The court certainly could have set Edwards' filing fee based on that review but

4. The other benefits listed by the statute as those conferred upon the inmate are: "medical care, dental care, recreational programming, educational opportunities offered to the inmate, legal services provided to the inmate without cost ... laundry, [and] guard protection services[.]" KRS 453.190(5).

5. This statute also seeks to avoid requiring the payment of fees and costs that would deprive an inmate's dependents of food, shelter and clothing. The trial court, of course, would have to take into account that extremely rare circumstance in which an inmate's dependents turn to him for support in these areas.

stopped short of that step. However, the trial court did state that "[i]f the Court were to permit the Defendant to proceed *in forma pauperis* he would have to pay a $40.00 filing fee." This statement reveals a confusion of the two separate procedures established by the legislature in KRS 453.190 on the one hand and in KRS 454.410 on the other.

When a person proceeds *in forma pauperis*, he proceeds "[i]n the manner of an indigent who is permitted to disregard filing fees and court costs[.]" BLACK'S LAW DICTIONARY (8th ed.2004), *in forma pauperis*. KRS 453.190 is merely a codification of that ancient common law doctrine.[6] In other words, proceeding *in forma pauperis* pursuant to KRS 453.190 *always* contemplates that the indigent litigant, whether inmate or non-inmate, *will pay nothing* toward filing fees and court costs.

■ By contrast, the inmate who qualifies for reduced fees and costs pursuant to KRS 454.410 is not proceeding *in forma pauperis*, but under a measure that is uniquely legislative. The statute permits an inmate, and no one else, to pay a reduced amount for filing fees and costs, in keeping with his reduced ability to pay, but it does not absolve him of the obligation to pay something, as little as $5.00, but according to his real means.

If the Jefferson Circuit Court had followed KRS 454.410 and taken the step of establishing Edwards' proper filing fee and costs, the court would then have been required to "give written notice to the inmate that the inmate's case will be dis-missed if the partial fees and costs are not paid within forty-five (45) days after the date of the order, or within an additional period that the court may, upon request, allow." KRS 454.410(3); *see also, Palmer v. O'Dea*, 8 S.W.3d 884, 885 (Ky.App.1999). We believe these steps were overlooked because the trial court dismissed the case on the independent grounds of KRS 454.405(1).

Nevertheless, the filing fee and costs of the original action and of this appeal remain unpaid and, for that reason, we must remand the case to the Jefferson Circuit Court to determine all proper filing fees and costs. We would remind the trial court that if, prior to this action, "the inmate has, on three (3) or more occasions within a five (5) year period, while incarcerated or detained in any facility, brought an action or appeal in any court that was dismissed on the grounds that it was frivolous, malicious, or harassing," he is automatically required to pay "the entire filing fee in full." KRS 454.410(5).

### *Dismissal of Edwards Complaint Pursuant to KRS 454.405(1)*

■ The Jefferson Circuit Court dismissed the civil action on grounds that it was frivolous. We agree. The complaint contains no specific averments that support the general assertion of fraud and therefore fails to comply with CR 9.02. Edwards' signature on the complaint is his oath that "it is well grounded in fact and is warranted by existing law [and] not interposed for any improper purpose, such as to harass or to cause unnecessary delay[.]"

---

**6.** The common law concept of indigents proceeding *in forma pauperis* made its first appearance in Kentucky jurisprudence in 1847. *Graham's Ex'r v. Sam*, 46 Ky. (7 B.Mon.) 403, 405, 1847 WL 2843 p. 2 (Ky.1847). When "Sam, and fourteen others, persons of color," all of whom were slaves, sued to enforce a provision in their master's will granting their freedom, they "were permitted, and very properly, to sue *in forma pauperis*." *Id.* at 403, 405. The appellate court affirmed the trial court's order interpreting the will as granting Sam and each of his co-plaintiffs their freedom, as well as "a decent suit of clothing and one hundred dollars cash." *Id.* at 404, 406.

CR 11. On the contrary, this complaint merely states the ultimate fact that would have to be determined, i.e., that the government committed fraud. It is not well grounded in fact and has no purpose except to harass his accusers and to attempt a delay in his criminal prosecution. Under such circumstances, such a complaint is factually frivolous. But the complaint is frivolous for an even more obvious reason—all of the defendants enjoy the protection of immunity.

■ Edwards' complaint sought to subject the named defendants to civil liability, but only in their official capacities. "A suit against state officials in their official capacities is not a suit against the officials but rather is a suit against the officials' offices and, thus, is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 59, 109 S.Ct. 2304, 2306, 105 L.Ed.2d 45 (1989). Because sovereign immunity has not been waived, each of the parties named by Edwards is entitled to immunity. *See also, Jefferson County Com. Attorney's Office v. Kaplan*, 65 S.W.3d 916, 920 (Ky.2001)("[P]rosecutors are entitled to absolute immunity.").

Under KRS 454.405 an inmate's action may be dismissed if the court is "satisfied that the action is legally without merit or factually frivolous." We believe this case satisfied both standards for dismissal. When the trial court dismissed this case, Edwards was about to stand trial in the related criminal case. On September 26, 2007, Edwards was convicted of first degree burglary, first degree assault, and receiving stolen property with a value greater than $100. We assume that, if raised, his claims of official misconduct did not persuade the jury.

For the foregoing reasons, the order of the Jefferson Circuit Court dismissing Edwards' complaint is affirmed. However, the case is remanded to the Jefferson Circuit Court for the sole purpose of determining under KRS 454.410 the proper fees and costs to be paid by Edwards, as well as the time frame in which he will be allowed to pay those fees and costs.

TAYLOR, Judge, concurs.

COMBS, Chief Judge, Dissents and Files Separate Opinion.

COMBS, Chief Judge, Dissenting:

I file this dissent because I believe that we are belaboring a moot point. The case has been dismissed, and we have impliedly indicated that the court did not err in dismissing it for having been filed frivolously. If the court had decided to allow the case to proceed, it indicated that it would then have exercised its discretion as to whether to allow Edwards to proceed *in forma pauperis*. (Page 802 of the majority opinion.) The court also indicated that if it had then found the status of *in forma pauperis* to be appropriate, it would have assessed a fee of $40.

Again, I believe that the discretionary process employed by the trial court as to the issue of proceeding *in forma pauperis* is a moot point that is beyond our analysis.

Consequently, I would affirm *in toto* without a remand.